745 So.2d 136 (1999)
STATE of Louisiana
v.
Tony A. DAVIS.
No. 98-KA-0731.
Court of Appeal of Louisiana, Fourth Circuit.
October 20, 1999.
*137 Harry F. Connick, District Attorney of Orleans Parish, Joseph E. Lucore, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant.
Court composed of Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY and Judge ROBERT A. KATZ.
*138 WALTZER, Judge.

STATEMENT OF THE CASE
On 15 January 1997, defendant Tony A. Davis was charged by Bill of Information with simple burglary, a violation of La.R.S. 14:62. On 24 February 1997, the State nolle prosequied the information and charged defendant with the simple burglary of a business, a violation of the same statute. On 14 April 1997, a jury found him guilty as charged.
He was thereafter charged as a triple offender in a multiple bill which alleged possession of marijuana with intent to distribute as one of the predicate convictions. On 19 August 1997, the trial court found him to be a triple offender. On 10 October 1997, the court sentenced the defendant to twelve years at hard labor as a triple offender, which is a departure from the mandatory life sentence in this instance, citing State v. Dorthey, 623 So.2d 1276 (La.1993). The State objected and orally noticed its intent to appeal the sentence. The defendant also moved for an appeal, which motion was granted.

STATEMENT OF FACTS
Nelson Wells, Jr., the owner of the H & H Lounge at 1534 Monroe Street, testified that between midnight and 1:00 a.m. on 20 November 1996, he left the lounge, locking the door and the outside iron gate. No one remained in the lounge and he had given no one permission to enter after he had left. About two hours later, he received a call from his alarm company advising him that the alarm had gone off at the lounge. He immediately went to check it out, finding police officers there when he arrived. From the outside of the building, he noticed that a glass window had been removed and the front door was damaged. Inside he observed that the cash register had been pried into, but could not open. In addition, the lock on the storeroom door was broken and a mirror near the outside window was smashed. Officers later observed a screwdriver on the windowsill at the perpetrator's place of entry and exit.
Officer Andrew Roccaforte of the New Orleans Police Department testified that he and Officer Michael Dalferes responded to the call from the victim's alarm company to the police department. Upon arrival, he observed part of a picture window had been removed and a neon light was hanging on the outside wall of the lounge.
Officer Dalferes, the driver of the police car, shone a spotlight on the front of the building, whereupon the officers observed the defendant climb out head first[1]. Officer Dalferes testified that he could clearly see defendant's face. Officer Dalferes retrieved a screwdriver from the crime scene.
The defendant then fled on foot. The officers called in a description of the suspect as a black male, 6'2" tall and wearing a black jacket with a hood. The officers additionally noted that the suspect was wearing blue work pants or blue jeans, but did not recall mentioning the pants color when the description was called in[2]. When the suspect fled, the officers followed him into a residential area. At one point, the suspect temporarily caught his pants leg on a chain link fence, but managed to extricate himself. In order to contain the suspect, the two officers stood at opposite ends of a square block and called for assistance from the K-9 unit, remaining at their outposts until the K-9 unit arrived.
Officer John Favaloro and his partner arrived with dogs, and advised the neighbors to get inside of their homes before he let the dogs out of his unit.
Officer Dalferes' testimony confirmed that of Officer Roccaforte. He also testified that he had seen defendant clearly *139 leaving the crime scene through the window and identified him in court.
Ernestine Williams testified that on the day of the crime she was living at 8724 Green Street and was at home between 3:00 and 4:00 in the morning. She testified that she was awakened when the defendant knocked then pushed open the door of her home. She also identified defendant in court. She testified that he asked her to let him in, alleging that someone was trying to kill him. Defendant came into the house and told Ms. Williams not to open the door to anyone. Ms. Williams's daughter said something was wrong, so Ms. Williams went outside to look around. After she went back inside, she noticed flashing lights outside of her house. She went back onto her screened porch and the defendant followed. Officer Favaloro told both of them to get back into the house because he was releasing dogs to search for a suspect. The defendant then went into the house. Ms. Williams went back inside, but stuck her head out of the door to let the officer know that the suspect was probably in her house and to ask for help. She testified that while she was out of the house, the defendant had removed his clothes, hidden them under a sofa, and put on her son's trousers. She identified the clothing defendant had been wearing when he entered her home.
Officer Favaloro testified that he was assigned to a K-9 unit that assisted Officers Dalferes and Roccaforte in searching Birch Street, Monroe Street and Green Street. When Officer Favaloro passed 8744 Green Street, he noticed an apparently African-American lady standing halfway out the door of an enclosed screen porch. He warned her about the K-9 dog that was coming to search the area. The lady stuck her head out of the door and started bobbing it to the side. She then went inside and shut the door. The officer opened the door, entered the house and saw the defendant sitting in a chair looking extremely nervous. The defendant's clothing did not match the description, but his frightened demeanor led Officer Favaloro to believe he was the perpetrator. Officer Favaloro noted that the defendant was wearing tight green pants instead of blue pants. Officer Favaloro went out to discuss the matter with his partner, and when he went back onto the porch the defendant had gone into the house.
Officer Favaloro called for the defendant to come back to the front of the house, and the defendant complied. Ms. Williams's daughter showed the officers where the defendant had stashed his jacket and pants under the sofa. The green pants the defendant was wearing when Officer Favaloro arrested him belonged to Ms. Williams's son.
Officer Favaloro turned the hooded jacket and torn pants over to Officer Roccaforte, who in turn marked them for identification and turned them over to the evidence room, together with the screwdriver found at the scene of the burglary and the clothing worn by the defendant at arrest. The only prints recovered by the crime lab were unsuitable for identification.

ERRORS PATENT REVIEW/ STATE ASSIGNMENT OF ERROR
A review of the docket master for the instant case, CDC # 387-259, indicates that the defendant was never arraigned. However, the charge was originally docketed as CDC # 387-287. The bill of information in that case was filed on 15 January 1997. On 21 January 1997 the defendant appeared for arraignment and, through appointed counsel, pled not guilty. On 24 February 1997, when the victim failed to appear for trial, the State nolle prosequied the case, reserving its right to reinstitute the charge. The bill for the instant case was filed that date. The new case was allotted to the same section of the district court. The defendant thus was properly arraigned on the charge, albeit under a different bill of information.
In any event, a failure to arraign the defendant is waived if the defendant enters upon the trial without objecting, and it is *140 considered as if the defendant pled not guilty. La.C.Cr.P. art. 555. The record indicates that no objection was made by the defendant for the failure to arraign. Accordingly, any failure to arraign was waived.
The record further indicates that the defendant was sentenced to twelve years at hard labor, without benefits, as a triple offender under a multiple bill. The multiple bill indicates that one of the defendant's prior offenses was for possession of marijuana with intent to distribute. Although a life sentence without parole is mandated by statute, the trial court sentenced the defendant to twelve years at hard labor under the provisions of the Habitual Offender Statute. The State appeals this sentence.
La. R.S. 15:529.1A(1)(b)(ii) provides:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The defendant's conviction for possession of marijuana with the intent to distribute is a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for not less than five years nor more than thirty years. Accordingly, the statute mandates a life sentence.
The defendant argued at sentencing, and replies to the State's appeal, that he is not the typical multiple offender contemplated by the legislature and thus, under State v. Dorthey, the trial court is obligated to impose a sentence which is not constitutionally excessive. The defendant notes that the predicate conviction which would trigger a life sentence in his case occurred in 1981, when he was only seventeen years old. He contends that he possessed only thirteen cigarettes, and that he was given a two-year probated sentence, which probation was not violated.
At sentencing, the trial court noted the intervening conviction in 1989, for possession of cocaine, for which the defendant was given a five-year probated sentence. The trial court then erroneously noted that neither of the defendant's probations was violated.
Ingrid Boutte, a probation and parole officer, testified at the multiple bill adjudication and identified the defendant as the same person previously convicted of the intervening offense of possession of cocaine. According to Ms. Boutte, the defendant violated conditions of that probation, which was extended and ultimately revoked. The defendant's original sentence was then vacated and he was resentenced on 7 May 1997 to three years at hard labor with credit for time served. On 16 May 1997 the defendant was released on parole. Ms. Boutte further testified that she supervised the defendant's parole from 16 May 1997 until 12 August 1998.[3] Although the dates of the intervening sentence are not clear from record, it is apparent that the defendant was on either probation or parole when he committed the instant offense on 20 November 1996. It is further evident that a rule to revoke probation or parole was filed in 1993, which resulted in an extension of the probation.
The defendant contends that none of his convictions were for crimes of violence. However, the prosecuting attorney correctly noted at sentencing that, in the instant offense, in his attempt to elude the *141 police, the defendant forced his way into someone's home at 3:00 a.m. and took clothing which did not belong to him. In addition, the defendant did significant property damage to the business establishment he burglarized.
In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the Louisiana Supreme Court reviewed a case in which the defendant, a fourth felony offender, was sentenced to thirty months at hard labor for possession of cocaine, despite the mandatory minimum of twenty years provided by the Habitual Offender Law. The court there reexamined the issue of when State v. Dorthey permits a downward departure from the mandatory minimum sentences provided in the Habitual Offender Law. The Johnson court held that the nonviolent nature of current or past crimes cannot alone rebut the presumption that the mandatory minimum sentence under the Habitual Offender Law is constitutional. While the defendant's record of nonviolent offenses may play a role in the sentencing judge's determination that the minimum sentence is too long, it cannot be the only or even the major reason for declaring that the sentence is excessive. Rather, to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is exceptional, i.e., that he is the victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Ultimately, the majority in Johnson found that the mandatory minimum sentence of twenty years was not excessive for possession of cocaine by the fourth felony offender, even though the defendant had no history of prior violent crimes; the criminal history was already factored into the mandatory sentence; the wisdom of imposing the mandatory minimum for a crime of personal destruction was a decision for the legislature; and even if the mandatory sentence defeated the goal of rehabilitation, it contributed to punishment and deterrence. 97-1906 at 10-11, 709 So.2d at 677-678.
In State v. Jackson, 96-2540 (La.App. 4 Cir. 11/26/97), 706 So.2d 494, writ granted, 97-3200 (La.5/15/98), 714 So.2d 679, opinion vacated, 96-2540 (La.App. 4 Cir. 8/12/98), 718 So.2d 1001, writ denied, 98-2560 (La.2/26/99), 738 So.2d 1069, this court found the life sentence imposed on a multiple offender was constitutionally excessive and remanded for resentencing. The Louisiana Supreme Court granted certiorari and remanded to this court for consideration in light of its opinion in State v. Johnson, discussed above. On remand, this court noted that the Supreme Court's decision in Johnson, "in essence, precludes a court from ever deviating from the sentences pronounced under the habitual offender statute." State v. Jackson, supra, at pp. 2-3, 718 So.2d at 1002.
In the instant case, the defendant's mandatory life sentence is triggered by a possession with intent to distribute offense which was committed approximately fifteen years prior to the instant offense. The intervening conviction was also on a drug charge, possession of cocaine. The defendant's record does not support the contention that he successfully completed the probation imposed for that offense. Rather, it shows that the defendant committed the instant offense while on probation or parole for the previous offense. Considering these facts, and further considering the great deference afforded to the legislature's determination of the appropriate minimum sentence, the sentencing judge's downward departure must be considered error. Therefore, we vacate the illegally lenient sentence and remand the case for resentencing.
FIRST ASSIGNMENT OF ERROR: Insufficient evidence was adduced at trial to support defendant's conviction of the crime of simple burglary.
The defendant admits that the State presented sufficient evidence that someone entered the H & H Lounge without *142 permission. The defendant further admits that the State presented evidence which tended to show that the defendant was this individual. However, the defendant contends that the State failed to show that he intended to commit a felony or any theft therein.
The standard of appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Either direct or circumstantial evidence may prove the essential elements of the crime. Where the evidence is circumstantial, conviction is proper, assuming every fact to be proved that the evidence tends to prove, only if the evidence excludes every reasonable hypothesis of innocence. La. R.S. 15:438. This rule is not a separate test from the review standard established by Jackson v. Virginia, but rather it is an evidentiary guideline which facilitates appellate review of the sufficiency of the evidence. State v. Jacobs, 504 So.2d 817, 820 (La. 1987). Ultimately, to support a conviction, the evidence, whether direct or circumstantial or both, must be sufficient under Jackson to satisfy any rational trier of fact that the defendant is guilty beyond a reasonable doubt. State v. Sutton, 436 So.2d 471 (La.1983), habeas corpus denied, 1992 WL 211584 (E.D.La.1992). Specific intent may be inferred from circumstances and the defendant's actions. State v. Smith, 94-2588 (La.App. 4 Cir. 3/27/96), 672 So.2d 1034. Credibility determinations are within the discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
Simple burglary is the unauthorized entry into any structure with the intent to commit a felony or any theft therein. La. R.S. 14:62.
In the instant case, the owner testified that he locked up his business establishment when he closed for the night and gave no one permission to enter the premises. The owner and the officers on the scene testified that a window was pried open and removed, and various other things, including the cash register, were pried or forced open. There is no dispute that there was an unauthorized entry. Both of the officers who responded to the scene testified that they recognized the defendant's face as he bolted through the window. The clothing observed on the perpetrator matched that which defendant had hidden beneath Ms. Williams's sofa.
A jury could conclude, beyond a reasonable doubt, that the defendant was the perpetrator. The broken store room door pry marks around the cash register indicate, beyond a reasonable doubt, that the perpetrator intended to commit a theft.
This assignment is without merit.
SECOND ASSIGNMENT OF ERROR: The trial court erred in adjudicating defendant a multiple offender.
The defendant argues that the proof of identity is insufficient as to his conviction for possession with intent to distribute marijuana, and that simple possession of cocaine is not a felony-grade violation of the Controlled Dangerous Substances Law which may be used to enhance sentence under a multiple bill.
Defendant contends that identification of his fingerprints as those on an arrest register is insufficient, citing State v. Payne, 586 So.2d 652 (La.App. 5 Cir.1991). The defendant notes that in Payne, as in the instant case, the State expert matched fingerprints of the defendant with those on an arrest register rather than fingerprints on a bill of information.
The court in Payne concluded that, although the State adequately proved Andrew Payne's prior felony conviction for a 2 May 1985 burglary in case number 85-1384, it did not positively establish that the Andrew Payne in the case before them *143 was the same person as the Andrew Payne convicted in the predicate case. There, the State failed to link the arrest register with the conviction documents.
That failure did not occur in the instant case. As noted by the trial court, the arrest register for the 1981 case is linked to the instant defendant by date of birth, street of address over several years, name and middle initial. In addition, the date and charge of the 1981 arrest are a match with the bill of information and conviction documents for that case. The State's evidence conclusively proves that the Tony A. Davis who was found guilty of simple burglary in the instant case is the same one who pled guilty to the possession of marijuana with the intent to distribute in 1981.
The defendant argues that simple possession of cocaine is not a felony-grade violation which may be used to enhance in a multiple bill. The Habitual Offender Law, La. R.S. 15:529.1, in pertinent part, provides:
Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows: (Emphasis added.)
All provisions of the Louisiana Criminal Code shall be given "a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3. The subject statute provides for the enhancement of a sentence when the offender has a prior conviction within this state of a felony or has been adjudicated a delinquent for the commission of a "felony-grade" violation of the Controlled Dangerous Substances Law. Under a genuine construction of that statute, an offender who was convicted of a felony, as an adult, may have his sentence enhanced on a multiple bill. That portion which defines only certain drug violations as "felony-grade," applies only to an offender whose predicate offense was an adjudication of delinquency under the Children's Code.
A felony, for the purposes of an adult conviction, is any crime for which an offender may be sentenced to death or imprisonment at hard labor. La. R.S. 14:2(4). The contested predicate offense, possession of cocaine, is punishable by imprisonment at hard labor for not more than five years. Accordingly, it is a felony which may be used to enhance the defendant's sentence.
This assignment is without merit.
THIRD ASSIGNMENT OF ERROR: Appellant received ineffective assistance of counsel.
The defendant argues that he was prejudiced by trial counsel's failure to fully and clearly explain the consequences to him of his refusal to accept a pre-trial plea bargain offer made by the State.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The *144 defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
In the instant case, the evidence on this issue is sufficient to determine the merits of the claim. The defendant avers that, prior to trial, the State offered him six years as a second offender if he would plead guilty to the instant offense. The defendant further avers that, after the first round of voir dire, when he began to understand the seriousness of his position, the State refused to reinstate the plea offer. The defendant notes that trial counsel, at sentencing, admitted she was unable to persuade him to accept the State's plea offer. However, neither the defendant pro se, trial counsel, nor defendant's appellate counsel suggests that the defendant was ever incorrectly advised of the sentence he would face if found guilty. Rather, the defendant failed to heed counsel's advice until after the alleged offer was withdrawn.
Even if there were some error on counsel's part, there would be no remedy. The State is never obligated to offer a plea agreement more favorable to the defendant than he would receive by a fair trial. If a conviction is reversed for trial error or ineffective assistance of counsel, the relief is a new trial. For the reasons set out in this opinion, we conclude that the defendant has already been given a fair trial.
This assignment is without merit.

CONCLUSION AND DECREE
For the foregoing reasons, the defendant's convictions of the crime of simple burglary and of being a multiple offender are affirmed. His sentence is vacated and the case is remanded to the district court for resentencing in accordance with this opinion.
CONVICTIONS AFFIRMED. SENTENCE VACATED. CASE REMANDED FOR RESENTENCING.
NOTES
[1] Officer Roccaforte identified defendant in court.
[2] Gwendolyn Cook, supervisor of the communications division, testified that, according to the complaint history record, the officers described the suspect as wearing blue jeans.
[3] At the August 19, 1997 multiple bill hearing, Ms. Boutte testified that she supervised the defendant's parole from 16 May 1997 until 12 August 1998. Considering that she used the past tense, she must have meant either that she supervised him until 12 August 1997 or that the parole was due to extend until 12 August 1998.