757 So.2d 895 (2000)
STATE of Louisiana
v.
Michael MONROE.
No. 99-KA-1483.
Court of Appeal of Louisiana, Fourth Circuit.
March 22, 2000.
*896 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, Susan Caruso, Law Clerk, New Orleans, Louisiana, Counsel for Plaintiff-Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, Louisiana, Counsel for Defendant-Appellant.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES, Judge JAMES F. McKAY, III).
BYRNES, Judge.
Following a bench trial on August 23, 1997, the appellant was found guilty as charged with simple burglary, a violation of R.S. 14:62. On March 16, 1998, the appellant was sentenced to three years at hard labor. On June 5, 1998, he was found to be a triple offender, with one of the predicates a violation of the Controlled Dangerous Substances Act punishable by more than five years imprisonment. Accordingly, the trial court sentenced him to life imprisonment at hard labor, as mandated by La. R.S. 15:529.1A(1)(b)(ii). A defense objection to the sentence was noted. On February 9, 1999, the court granted counsel's motion for this out of time appeal.

STATEMENT OF THE FACTS
On March 20, 1997, at around 2:30 a.m., Officers Anthony Mendoza and Rickey Blanchard responded to a business burglary in progress call at the Pie in the Sky Restaurant on Magazine Street in New Orleans. When they arrived at the scene, they observed a broken windowpane and waited near that window for back-up assistance. Before the back-up officers arrived, the defendant, Michael Monroe, exited through the window carrying a crowbar in one hand and a flashlight in the other. The officers arrested him and advised him of his Miranda rights. The defendant told the officers, "I want to go to jail."
*897 Joanie Montgomery, owner of the restaurant, also went to the scene when she was called about the burglary. She noticed that, since she closed the restaurant for the evening: the latch on the shutters over the broken window had been pried off, two of the three doors were beaten with an object, a plant was knocked off of the window sill of the broken window, two water coolers had been moved, and the water bottle had been removed from one of the coolers.
The defendant testified that he was just passing by on his way from his mother's house to his sister's house when the officers arrested him.

ERRORS PATENT REVIEW
A review of the record for errors patent indicates that there were none.

ASSIGNMENT ONE
The appellant argues that the trial court erred in its denial of the motion for new trial relative to the defendant's refusal to accept a plea based upon misinformation provided by the district attorney.
This argument was previously raised by the appellant in an application for supervisory writs which was denied without written reasons. See unpublished writ # 98-K-0108. Accordingly, the claim is here discussed on its merits.
La.C.Cr.P. art. 851 provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
Neither appellant's motion for new trial nor his appeal alleges any trial error. Rather, the appellant avers that after trial, but prior to imposition of any sentence, he first learned that he faced a mandatory life sentence as a third felony offender. He then filed a written motion for new trial, as required by La.C.Cr.P. arts. 852, 853. He there alleged that, prior to trial, the State offered to let him plead guilty and represented to him that his two prior convictions subjected him to an enhanced sentence of between eight and twenty-four years. The appellant further explains that counsel approached the trial judge with the plea offer and was advised that if he pled guilty, he would be sentenced to eight years. Counsel then approached the appellant with the offer. The appellant elected to go to trial, not realizing that he faced a mandatory life sentence.
In State v. Ledet, 97-363 (La.App. 5th Cir. 10/28/97), 701 So.2d 1067, the defendant pled guilty, induced by the trial court's inaccurate representation that the maximum sentence exposure was fifty years, when in fact the maximum sentence was only thirty years. Upon review, the court found that the appellant's plea was not knowing and voluntary because of the inaccurate representation of the maximum penalty exposure. The conviction and sentence were thus vacated. Ledet was concerned *898 with the requirements for a valid guilty plea. It has no bearing on the instant case where the defendant pled not guilty and went to trial and was found guilty. In Ledet, by pleading guilty the defendant gave up his right to a trial where there was always a chance of a different outcome, i.e., there is always the possibility that he could be found not guilty, especially in view of the constitutional presumption of innocence. Thus, in Ledet the guilty plea deprived the defendant of numerous legal protections, including the right to a trial, the presumption of innocence, the right to confront his accusers, and the right to appeal among others. It is the sacrifice of these legal safeguards of the accused that create consideration for the plea bargain, and concomitantly give substance to the accused's right to complain about vices of consent, if any, or to have the agreement enforced.
The same reasoning does not apply to the instant case. In the instant case Monroe went to trial and was found guilty. He preserved all of his legal safeguards. He gave up none, because there is no "right" to a plea bargain. If he had changed his plea to guilty he would still be guilty. By rejecting the chance to plead guilty, Monroe did not relinquish a chance to be found not guilty as was the case in Ledet. To the contrary, by failing to accept the plea bargain he preserved all of his constitutional rights including his only chance of being found not guilty, and gave up none.
Moreover, his rejection of the plea bargain, regardless of the source and nature of the misinformation upon which that rejection was based, in no way could be said to have prejudiced the conduct of the trial which resulted in the finding that he was guilty. In other words, the defendant cannot argue that he might have been found not guilty had his decision to go to trial been based on accurate information about the maximum possible sentence. The error as to potential sentencing had no effect on the evidence at trial, no bearing on his guilt or innocence.
A plea bargain is a contract between the state and one accused of a crime. State v. Lewis, 539 So.2d 1199, 1204 (La.1989). The consent of both parties is required. Id. Error vitiates consent when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. Id. But plea agreements are more than contracts. They are constitutional contracts. Id. at p. 1205. Plea agreements must be construed in light of the rights and obligations created by the Constitution.[1]Id. Therefore, under Ledet we would have to say the maximum sentence could be a cause of a plea agreement and that an error as to the nature of such a sentence could vitiate the consent to a plea agreement. However, in the instant case the parties failed to enter into a plea agreement, so there was no consent to a plea agreement to either abrogate or enforce. A party to a contract may obtain a vested interest in its enforcement, but a party who has rejected a contract has no such vested interest.
Therefore, there is no merit in the defendant's argument that the trial court should have granted him "a new trial and allowed him to make an intelligent decision with all of the facts before him." The only purpose of the new trial in this case would be to allow the defendant to change his plea from not guilty to guilty. But there is no point in doing that when the defendant has already been found guilty. What the appellant is actually requesting is that this Court require the State to reoffer the defendant the illegally lenient plea bargain, and that an illegally lenient sentence be imposed pursuant thereto.
*899 This argument has several shortcomings. First, it presupposes that the trial court would not have noticed the illegal nature of the sentence prior to its imposition. Second, Courts may not require the state to offer a plea agreement[2], especially one based on an illegally lenient sentence, and that would be the effect of granting the defendant's request. Having rejected the original plea offer for whatever reasons, the defendant can claim no vested right to it. Although it may seem that the defendant is seeking to enforce the original plea agreement that is not the case. There is no original plea agreement to enforce. That agreement was rejected by the defendant. Therefore, the legal effect of what the defendant is asking would be to require the state to offer a new plea agreement. The defendant having been found guilty at trial, the state has no incentive to offer him a plea agreement for the purpose of obtaining a guilty plea.
Moreover, we note that had the state advised the defendant that he faced a possible life sentence, the state would not have offered him the plea bargain he now wishes he had accepted. The offer the defendant wishes he had accepted was based on the erroneous assumption that he faced a sentencing range of at most eight to twenty years. The state would never have offered him the illegally lenient plea bargain of eight years had it been in a position to properly advise the defendant of his sentencing exposure. Therefore, even had the plaintiff been properly advised of his sentencing exposure, he would not have been offered the plea bargain he now desires. In other words, the plea bargain the defendant desires and accurate sentencing information are mutually exclusive. They could not both exist simultaneously under the facts of this case. Accordingly, it cannot be said that the defendant lost his chance at the plea bargain because he was furnished with inaccurate sentencing information, as it was a chance he never really had  accurate information would have prevented the plea offer.
Accordingly, because the appellant asserts no legal errors in his trial, and the State may not be required to offer a plea agreement which includes an illegally lenient sentence, the district court correctly denied the appellant's motion.

ASSIGNMENT TWO
The appellant argues that the trial court erred by imposing a constitutionally excessive sentence. Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4th Cir.1985).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La. 1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). If adequate compliance with La.C.Cr.P. article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Guajardo, 428 So.2d 468 (La.1983); State v. Quebedeaux.
Full compliance with Art. 894.1 is not required where the record clearly shows an adequate factual basis for the sentence imposed, as the goal of the article is an articulation of a factual basis for the sentence rather than rigid or mechanical *900 compliance with its provisions. State v. Lobato, 603 So.2d 739, 751 (La.1992).
In the instant case, the trial court made no mention of the aggravating or mitigating factors enumerated in Art. 894.1, nor was there any discussion of the personal history of the defendant. However, the multiple bill of information and the hearings which preceded the multiple bill hearing indicate that La. R.S. 15:529.1 A(1)(b)(ii) mandated a life sentence for the appellant as a triple offender with one prior offense being a distribution of cocaine, a violation of the Controlled Dangerous Substances Law punishable by more than five years. The pre-sentence report further indicates that the defendant has an "extensive criminal history." The appellant does not contest any of the facts shown in the pre-sentence report.
Besides his convictions, the appellant had arrests for simple robbery, two arrests for simple battery, and hit and run driving, and other offenses. The defendant was placed on intensive probation following his plea to the distribution charge. During this period of probation, the subject was arrested on four occasions.
The appellant here avers that his life sentence is unwarranted because his crimes are "non-violent" and his predicates are "stale." In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the Louisiana Supreme Court determined that, in order to depart from a mandatory sentence under the Habitual Offender Law, appellant must be proven by clear and convincing evidence to be "exceptional." Id. at p. 7, 709 So.2d at 676. The court there further noted that the non-violent nature of the instant crime or of past crimes may not be the only reason or even the major reason for a sentencing judge to determine that a statutory minimum sentence is excessive.
As to the "staleness" of the predicate convictions, the appellate was arrested on July 21, 1990 for the predicate burglary and on April 5, 1991 for the distribution of cocaine. Following the cocaine conviction, the appellant was arrested on five separate occasions prior to his arrest on March 20, 1997 for the instant offense. In State v. Cosby, 31,073 (La.App. 2 Cir. 8/19/98); 717 So.2d 279, the court relied on predicates dating back to the 1960's. We find no authority to support the contention that the predicates are stale.
Considering these facts, the appellant failed to show that he was "exceptional," and thus deserving of a departure from the life sentence prescribed by the statute. Accordingly, the appellant's sentence is not constitutionally excessive.
For the foregoing reasons the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] This is not to say that there is a constitutional right to a plea bargain. There is none. The state is not required to offer a plea bargain. State v. Davis, 98-0731 (La.App. 4th Cir. 10/20/99), 745 So.2d 136.
[2] See State v. Davis, supra.